Margaret Mae **SHEARRER, Individually and as Independent Executrix of the Estate of Troy E. Shearrer, Deceased, Appellant,**

v.

**Violet Shearrer HOLLEY, as Trustee of the Edgar H. Shearrer and Ima Shearrer Trust, and Troy E. Shearrer, Jr. and Diane Williams, Appellees.**

No. 04–96–00942–CV.

Court of Appeals of Texas, San Antonio.

July 30, 1997.

Douglas Wayne Sanders, David P. Stanush, Oppenheimer, Blend, Harrison & Tate, Inc., San Antonio, Edward E. Haverlah, Pleasanton, for appellant.

Joyce W. Moore, Joyce W. Moore, P.C., San Antonio, R. Thomas Franklin, Atascosa County Attorney, Jourdanton, for appellee.

Before HARDBERGER, C.J., and STONE and GREEN, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

This case involves a dispute over certain real property transferred pursuant to the terms of a trust. The appellant is the wife of Troy Shearrer, now deceased, who was a beneficiary and former trustee of the trust. The appellees are the successor trustee, Violet Shearrer Holley, and the children of Troy Shearrer from his first marriage. After the trust terminated, the successor trustee filed a declaratory judgment action seeking to determine who was entitled to the real property at issue. Following a bench trial, the trial court entered a declaratory judgment stating that the property was owned by Troy's children, rather than his second wife. It is from this judgment that Margaret Mae Shearrer appeals.

### FACTS

The trust at issue in this case was created by Troy's parents, Ima M. Shearrer and Edgar H. Shearrer (the Grantors), in two

instruments. The first instrument was a trust deed executed on September 29, 1969 conveying a one-half undivided interest in certain real property to Troy as trustee. The second instrument was a trust deed executed on February 25, 1970, which conveyed the remaining one-half undivided interest in the real property to Troy as trustee. The two trust deeds were administered as one trust and are referred to collectively herein as the trust. Pursuant to the terms of the trust, Troy, as trustee, was to hold the property in trust for the benefit of the Grantors and their three children, Troy E. Shearrer, Violet Shearrer Holley, and Shirley Shearrer Palmer. The trust was to terminate upon the death of the surviving Grantor and the property was to then be distributed to the three children in the manner set forth in the trust. The trust provided that full ownership in various tracts, rather than undivided interests, was to pass outright to each of the three children. Troy and his wife, Margaret, lived on the real property designated to pass to Troy.

Appellant, Margaret Mae Shearrer, was married to Troy Shearrer for over twenty years. Troy died on January 4, 1993, prior to the termination of the trust, and left a will that provided for all of his probate estate to go to Margaret. After Troy's death, his sister, Violet Shearrer Holley, became successor trustee and served as such until the trust terminated at Edgar Shearrer's death in January 1994 (Ima Shearrer died in April 1981).

Some time after the trust terminated, a dispute arose between Troy's children from his first marriage, Troy E. Shearrer, Jr. and Diane Williams, and his second wife, Margaret, regarding ownership of the real property conveyed to Troy in the trust. Unable to determine whether to deliver the property to the children or Margaret, the successor trustee filed her Plaintiff's Original Petition in Interpleader and for Declaratory Judgment. The sole issue involved in the declaratory judgment action was whether certain language in the trust created a vested or contingent remainder interest in Troy Shearrer. If the remainder was vested, Troy could devise his remainder and Margaret was entitled to the property. If the remainder was contingent upon Troy surviving his parents, the remainder would lapse in the absence of a gift over, revert to the estate of Edgar Shearrer, the last grantor to die, and pass pursuant to Edgar's will and the Texas anti-lapse statute to Troy's children (Edgar's grandchildren).

The trial court resolved the dispute in favor of Troy's children. The court entered a declaratory judgment and filed Findings of Fact and Conclusions of Law holding that the property reverted to Edgar's estate. Margaret timely perfected this appeal of the declaratory judgment.

## DISCUSSION

■ In her sole point of error, Margaret claims that the trial court erred in declaring that the real property reverted to Edgar Shearrer's estate and passed to Troy's children. We review declaratory judgments under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1986); *Truck Ins. Exchange v. Musick,* 902 S.W.2d 68, 69 (Tex. App.-Fort Worth 1995, writ denied). We will uphold the trial court's decision, being one of law, if it can be sustained on any legal theory supported by the evidence. *Truck Ins. Exchange,* 902 S.W.2d at 69.

In support of her contention that the trial court erred in its holding, Margaret relies primarily on the language of the trust instrument and on public policy. First, with regard to vesting, Margaret argues that Troy's remainder interest became vested at the time the trust was created and was not contingent upon his surviving both his mother and father. Margaret contends that her late husband's remainder interest was vested subject to divestment, with the only divesting condition being a revocation of the trust by the Grantors during their lives. Accordingly, Margaret claims that the language used by the Grantors in the trust instruments did not condition Troy's interest on survival. The language at issue is contained in paragraph four of the trust deed, which reads as follows:

4. Upon the death of the survivor of Edgar H. Shearrer and Ima Shearrer, the said trustee shall convert all personal

property belonging to this trust to cash and distribute the same, share and share alike to the said Troy E. Shearrer, Violet Shearrer Holley, and Shirley Shearrer Palmer. The real estate remaining on hand shall be distributed and title shall thereupon vest as follows:

&za

B. To Troy E. Shearrer the following described land and premises: ...

Margaret argues that the vesting language in this paragraph had nothing to do with the determination of whether a beneficiary's interest was vested or contingent, but meant only that the legal title previously conveyed to the trustee would vest in the beneficiaries at the termination of the trust and merge with the equitable title vested in the beneficiaries at the creation of the trust, resulting in fee simple title in the beneficiaries. According to Margaret, the language in paragraph four was a "trust administration technique" used by the Grantors to avoid the need for subsequent deeds to transfer legal title from the trustee to the beneficiaries.

■ We agree that the language used by the Grantors in paragraph four of the trust deed did not condition Troy's interest on survival. While the trust deeds provide that title would vest in Troy upon the death of his parents, the courts have interpreted similar language to delay only the time of enjoyment or possession, not the time of vestment. *See McGill v. Johnson,* 799 S.W.2d 673, 675 (Tex. 1990); *Rust v. Rust,* 147 Tex. 181, 211 S.W.2d 262, 267 (Tex.Civ.App.—Austin), *aff'd,* 147 Tex. 181, 214 S.W.2d 462 (1948). For example, in *Rust,* the Austin court of appeals held that "a devise by A to B for life with remainder *at his death* to C creates a vested remainder in C upon the death of A, subject to B's life estate," and that the words "at his death" refer to the time when the right of possession begins, not when the remainder vests. *See Rust,* 211 S.W.2d at 267. This holding was affirmed by the supreme court. *See Rust v. Rust,* 147 Tex. 181, 214 S.W.2d 462 (1948). More recently, in *McGill,* the supreme court, citing *Rust,* interpreted the words "at the death of my said son" as referring only to the time of enjoy-

ment or possession, rather than vestment. *McGill,* 799 S.W.2d 673, 675 (Tex.1990) (citing *Rust v. Rust,* 147 Tex. 181, 211 S.W.2d 262, 267 (Tex.Civ.App.—Austin), *aff'd,* 147 Tex. 181, 214 S.W.2d 462 (1948)). These cases establish that delayedvesting language does not necessarily create a contingent remainder.

Appellees argue that the word "title" in the trust deed at issue in this case distinguishes the language in this case from that used in the *McGill* and *Rust* instruments. In *McGill,* the gift language referred to a *remainder* vesting. In *Rust,* the instrument referred to the vesting of *property held in trust.* Appellees contend that the phrase *"title* shall thereupon vest" precludes a presumption in this case that only possession was to vest upon the death of the survivor of the Grantors. In support of this contention, appellees rely in part on the following language in an early supreme court decision:

What was meant [by the language in question] was manifestly that the remainderman's right of possession, while indefeasible, would not arise until the survivor's death, *not* that the *title* to the remainders themselves did not vest sooner.

*Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 892 (1948) (emphasis added). Appellees argue that the word "title" would have made a difference to the *Chadwick* court, and, therefore, to the courts in *McGill* and *Rust.* Appellees' reliance on *Chadwick* is misplaced, however, and any distinction based on the word "title" appears to be one without a difference. In the trust context, unlike the legal-life-estate context in *Chadwick,* the word "title" does not necessarily denote ownership of property. As the Restatement (Second) of Trusts explains, in the law of trusts, "the term 'title,' unlike 'ownership' is a colorless word." RESTATEMENT (SECOND) OF TRUSTS § 2 cmt. d (1959). A person may have title to property in the trust context, but may not own the property outright because the person is under a duty to deal with the property for the benefit of another person. *See id.* cmt. d, illus. 2 (providing example of way in which person may have title to property without owning it). In this case, for example, Troy had legal title as

trustee and equitable title as a beneficiary in the property at issue even before the trust terminated. This did not mean, however, that Troy owned the property outright in either capacity. He merely owned two different interests in the property in different capacities.

 It is basic trust law that "for a trust to be a trust, the legal title of the [trust property] must immediately pass to the trustee, and beneficial or equitable interest to the beneficiaries." *Cutrer v. Cutrer,* 334 S.W.2d 599, 605 (Tex.Civ.App.—San Antonio 1960), *aff'd,* 162 Tex. 166, 345 S.W.2d 513 (1961). During the duration of the trust, neither the beneficiaries nor the trustee own the property. It is not until the legal and equitable interests merge in the beneficiaries that the beneficiaries acquire a full ownership interest in the property. *See Cisneros v. San Miguel,* 640 S.W.2d 327, 330 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). This merger of interests may be accomplished by an express conveyance of the legal title to the beneficiaries by the trustee upon termination of the trust, or may occur automatically upon termination of the trust "where by the terms of the trust is provided that upon expiration of the period of duration of the trust the trust property shall vest in the beneficiary." *See* RESTATEMENT (SECOND) OF TRUSTS § 345 cmt. a. It is not unreasonable to conclude that the Grantors in this case chose the second option and expressly provided, in paragraph four, for the automatic vesting of legal title in the beneficiaries at the expiration of the trust. The word "title" as used in paragraph four likely refers to the legal title to be transferred to the beneficiaries when the trust terminated at the death of Troy's parents, and does not preclude an interpretation of the remainder interest created in Troy as vested rather than contingent. Although Troy held legal title to the property in his capacity as trustee, he simply would not receive the legal title to the property in his beneficiary capacity until the trust terminated.

Other language, or a lack thereof, in the trust deeds at issue in this case also indicates that Troy's remainder interest should be construed as vested rather than contingent. As Margaret argues, no express survivorship language was used by the Grantors, and such a condition should not be read into the trust. The Grantors could easily have used phrases such as "to Troy E. Shearrer if he survives Edgar H. Shearrer and Ima Shearrer" or "title shall vest in the persons who survive Edgar H. Shearrer and Ima Shearrer" if survival was a condition precedent. The complete absence of specific language of survival dictates that Troy's remainder interest vest at the time of the creation of the trust. *See Turner v. Adams,* 855 S.W.2d 735, 738 (Tex.App.—El Paso 1993, no writ) (concluding that "the complete absence of specific [survival] language in the instant case results in the interest vesting at Mrs. Patterson's death with only enjoyment or possession deferred") (emphasis in original). Appellees have failed to cite a single case in which a condition of survival has been implied when the instrument at issue contained neither a provision requiring survival nor a gift over in the event the remainderman predeceases the life tenant. We will not imply such a condition when none was expressed by the Grantors.

 Rules of construction and public policy also dictate a reversal in this case. Texas law has long favored a construction that allows vesting at the earliest possible time. *McGill,* 799 S.W.2d at 675; *Chadwick,* 208 S.W.2d at 891. Such a construction has been uniformly held to be in the public interest because it provides for a more complete disposition of property interests and provides for greater legal effectiveness. *See Rust,* 211 S.W.2d at 266; *Chadwick,* 208 S.W.2d at 891. "Texas courts will not construe a remainder as contingent when it can reasonably be taken as vested." *McGill,* 799 S.W.2d at 675; *see also Pickering v. Miles,* 477 S.W.2d 267, 270 (Tex.1972). It is well settled that a remainder is vested when there is a person in being at the creation of the interest who would have a right to immediate possession upon termination of the intermediate estate. *Chadwick,* 208 S.W.2d at 891; *Bradford v. Rain,* 562 S.W.2d 514, 518 (Tex. Civ.App.—Texarkana 1978, no writ); *Reilly v. Huff,* 335 S.W.2d 275, 278 (Tex.Civ.App.—San Antonio 1960, no writ). In the instant

case, Troy met this criteria, and his remainder interest can reasonably be taken as vested. In fact, there is no substantial basis in the record for any other conclusion. Accordingly, we conclude that Troy's remainder interest in the property at issue in this case was vested, rather than contingent, and that Troy could pass title to the property to appellant, Margaret Shearrer, through his will.

The judgment of the trial court is reversed and judgment is rendered that the remainder interest of Troy Shearrer in the property at issue vested at the time the trust was created and could be passed to his second wife, Margaret Shearrer, through his will.