**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 97-41085
_____


BANK ONE TEXAS, NATIONAL ASSOCIATION, Trustee
of the Red Crest Trust; LILIA BEATRICE COX
HARRIS; LINDA HARRIS BEARD; MARGIE HARRIS
NEWTOWN; JOHN H. MCMULLEN; ANDY J. MCMULLEN,


                    Plaintiffs - Appellants,


versus


UNITED STATES OF AMERICA; KCS RESOURCES
INCORPORATED; TESORO EXPLORATION AND
PRODUCTION COMPANY; TRANSTEXAS GAS
CORPORATION; TESORO E & P COMPANY, Limited
Partnership,


                    Defendants - Appellees.

_____

Appeal from the United States District Court
    for the Southern District of Texas
_____

October 16, 1998

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA,
Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    Bank One Texas, N.A. ("Bank One"), Lilia Beatrice Cox Harris,

Linda Harris Beard, Margie Harris Newtown, John H. McMullen and

Andy J. McMullen ("the McMullens") appeal the dismissal of their

Quiet Title Act ("QTA"), 28 U.S.C. § 2409a (1994), claim.  We

affirm.

In 1927, H. J. McMullen bought "an undivided one-sixteenth interest in and to all oil, gas and other minerals in and under, and that may be produced from" several pieces of land located in Zapata County, Texas, totaling slightly more than 1000 acres ("mineral interests"). He later ceded to McMullen Oil & Royalty, Inc. ("McMullen Oil"), "any and all moneys of any kind or character paid by any person [sic] firm or corporation, in any way or manner, as down payment [sic] bonus money or delay rentals, in connection with" leases of the mineral interests, as well as the "power and authority to execute" such leases. McMullen Oil, in return, paid $10.00, and promised that all royalties from the mineral interests would be "the property of H. J. McMullen, individually and his heirs, representatives and assigns" and that the leases would direct payment of royalties to H. J. McMullen.

H. J. McMullen died in 1934. He left everything to his wife, Susie McMullen. Susie McMullen, who later married George Langille, died in 1938. Her will placed the residue,[1] of which the mineral interests were a part, in trust ("Langille Trust"). It named her two children as life beneficiaries of the Langille Trust; they were to receive payments from the trust res for the duration of their lives. *See Dickson v. Dickson,* 544 S.W.2d 200, 201 (Tex.

---

[1] The residue is "[t]he surplus of a testator's estate remaining after all the debts, taxes, costs of administration, and particular legacies have been discharged." BLACK'S LAW DICTIONARY 1310 (6th ed. 1990).

App.))Austin 1976, writ dism'd w.o.j.) (describing life beneficiaries of a trust). The will named the heirs of Langille's children as remainder beneficiaries of the Langille Trust; they were to receive any res remaining upon the death of the surviving child. *See Barcelo v. Elliott*, 923 S.W.2d 575, 576 (Tex. 1996) (describing remainder beneficiaries of a trust). This remainder interest immediately vested because one of Langille's grandchildren, Glenn Harris, Jr., was alive when she died. *See Caples v. Ward,* 179 S.W. 856, 857-58 (Tex. 1915) ("A remainder is vested where there is a person in being who would have an immediate right to the possession upon the termination of the intermediate estate.").

Langille's will designated Fort Worth National Bank ("FWNB") as trustee of the Langille Trust. It granted the bank, in that capacity, the following authority:

> To make demands, sue and receipt for all amounts due and owing to, and claims and causes of action owned by or involving this Trust; and, to defend all claims and causes of action asserted against the Trust property, or this Trust, or the interest of any beneficiary therein, and to settle and compromise for, and on behalf of this Trust, and all beneficiaries of same, all claims, demands, and causes of action involving either the Trust property or the right, title or interest of any beneficiary therein, now in being or unborn; all of which said settlement and compromise as so made by said Trustee, shall be made by the Trustee acting upon its sole and exclusive discretion and judgment, and when made, shall be binding upon all of the Trust Estate whether in being or unborn.

FWNB, as trustee, acquired the legal title to the Langille Trust's property, while the beneficiaries took an equitable interest. *See Cutrer v. Cutrer*, 334 S.W.2d 599, 605 (Tex. Civ. App.))San Antonio 1960) ("for a trust to be a trust, the legal title must immediately pass to the trustee, and beneficial or equitable interest to the beneficiaries"), *aff'd*, 162 S.W.2d 513 (Tex. 1961); *see also Shearrer v. Holley,* 952 S.W.2d 74, 78 (Tex. App.))San Antonio 1997, no writ) (observing that the merger of legal and equitable interests ends a trust).

The Government instituted a condemnation action in 1949 against approximately 85,237 acres in Zapata County to obtain land on which to construct Falcon Dam.[2] *See United States v. 85,237 Acres of Land, More or Less, in Zapata County, Tex.,* 157 F. Supp. 150, 152 (S.D. Tex. 1957), *aff'd,* 252 F.2d 116 (5th Cir. 1958). The condemnation action encompassed the properties in which the mineral interests were held. At the outset, the Government filed a Declaration of Taking that announced the taking of the lands at issue "in fee simple title absolute, subject to existing easements for public utilities and highways." It identified both FWNB, as executor and trustee under Langille's will, and McMullen Oil as

---

[2] The United States built Falcon Dam, a multipurpose storage dam, and an accompanying hydro-electric power plant on the Rio Grande River pursuant to a 1944 treaty with Mexico concerning, among other things, water utilization on the Rio Grande. *See* Treaty Respecting Utilization of Waters of the Colorado and Tijuana Rivers and of the Rio Grande, Feb. 3, 1944, U.S.-Mexico, 59 Stat. 1219; *Allis Chalmers Corp. v. Friedkin,* 481 F. Supp. 1256, 1259 (M.D. Pa. 1980), *aff'd,* 635 F.2d 248 (3d Cir. 1980). It completed Falcon Dam in 1952. *See John B. Hardwicke Co. v. United States,* 467 F.2d 488, 490 (Ct. Cl. 1972).

among the "purported owners" of each parcel in which H. J. McMullen had purchased a mineral interest. The district court subsequently entered a judgment that pronounced the lands listed in the Declaration of Taking condemned upon the Declaration's filing and that vested title to those lands in the United States in fee simple, subject to an exception. *See* 40 U.S.C. § 258a (1994) (Declaration of Taking Act).[3]

The Government served FWNB, as "Executor and Trustee under the will of Susie McMulle[n] Langille," with a notice of the condemnation action in 1955. *See* FED. R. CIV. P. 71A(d)(3) (requiring personal service of a defendant to a condemnation action residing in the United States whose residence is known).[4] FWNB neither filed an answer, made an appearance nor sought to collect sums that the district court adjudged to be just compensation for the mineral interests, *see* 28 U.S.C. § 258a (1994) (creating a right to just compensation); FED. R. CIV. P. 71A advisory committee's note ("Failure on the part of the defendant to serve an answer constitutes a consent to the taking and to the authority of the court to proceed to fix compensation, but it does not preclude

---

[3] The condemnation procedure established by the Declaration of Taking Act has stayed the same since the measure's enactment in 1931. *See* 40 U.S.C. § 258a (1994) (Amendments).

[4] Federal Rule of Civil Procedure 71A, which provides procedures for condemnation cases, became effective on August 1, 1951. *See* FED. R. CIV. P. 71A advisory committee's note. It governed "all proceedings in actions brought after it [took] . . . effect and also . . . all further proceedings in actions then pending," unless the court found application to a given pending action infeasible or working injustice. *Id.*

the defendant from presenting evidence as to the amount of compensation due him or in sharing the award or distribution.").

A disagreement about the mineral interests arose in the early 1960s. FWNB believed that the Langille Trust solely held them. McMullen Oil also claimed ownership, except for royalties. This dispute became moot in 1966, when McMullen Oil conveyed to FWNB, as "Trustee under the Will of Susie McMullen Langille," title to and interest in all of its oil, gas and mineral interests.

Langille's surviving child died in 1984. The remaining assets in the Langille Trust then were distributed to Harris and the McMullens, Langille's three grandchildren (i.e., her children's heirs). Harris and the McMullens then pooled their interests in the mineral or royalty interests that they had received from the Langille Trust to create the Red Crest Trust. They designated FWNB's successor, Texas American Bank, N.A., as trustee of the Red Crest Trust. Bank One later assumed that role.

In 1995, Bank One, Harris' heirs (Lilia Beatrice Cox Harris, Linda Harris Beard and Margie Harris Newtown)[5] and the McMullens filed a Rule 60(b) motion in the condemnation action contesting the Government's title to the mineral interests.[6] *See* FED. R. CIV. P. 60(b) (listing instances in which a district court may relieve a

---

[5]     Harris died in 1989.

[6]     Bank One's participation in the condemnation action, as well as in this case, occurred because it perceived itself as "stand[ing] in the position of" Harris' heirs and the McMullens.

-6-

party of a final judgment, order or proceeding). The district court dismissed for lack of subject matter jurisdiction, holding that the QTA was the exclusive means for litigating the challenge. *See United States v. 85,237 Acres of Land, More or Less*, No. 97-40419, at 1-2, 4 (5th Cir. 1997) (unpublished opinion)(reporting the district court's ruling). In doing so, it rejected the contention that a 1970 order closing the condemnation action ("1970 order") was not a final judgment. *See id.* at 1 (same). We affirmed the dismissal of the Rule 60(b) motion, concluding that the 1970 order "was a final judgment," *id.* at 1, and that Bank One, Harris' heirs and the McMullens, as non-parties to the condemnation action, had "to assert their claims to the condemned property via an independent action against the United States, not a Rule 60(b) motion," *id.* at 6.[7]

While their appeal of the dismissal of their Rule 60(b) motion was pending,[8] Bank One, Harris' heirs and the McMullens brought a QTA suit disputing the United States' title to the mineral interests in 1996. The district court, relying on the complaint and the undisputed facts, held the action barred by the QTA's

---

[7] We found no need, however, to deem the QTA the sole means for Bank One, Harris' heirs and the McMullens to pursue their title challenge. *See Bank One* at 5-6.

[8] Bank One, Harris' heirs and the McMullens initially sued only the United States. They subsequently added as defendants KCS Resources, Inc., Tesoro Exploration and Production Company, TransTexas Gas Corporation and Tesoro E & P Company, which were alleged to be entities "conducting mineral production operations" on the lands in which the mineral interests were held.

twelve-year statute of limitations, granted summary judgment and entered a dismissal order.[9]  It again rejected the argument that the 1970 order failed to constitute a final judgment in the condemnation action.  A timely appeal followed.

II

The parties differ over whether or not this case comes within the QTA's twelve-year statute of limitations.  Bank One, Harris' heirs and the McMullens argue that their claim accrued when Harris and the McMullens vested in possession in 1984))twelve years prior to the filing of this suit))because Harris and the McMullens never received notice from the Government of the condemnation action.  The United States and its co-defendants counter that accrual occurred upon FWNB receiving notice of the condemnation action.  In support, they cite the doctrine of virtual representation, a rule of Texas trust law that declares the following:

> In actions adverse to a trust, if the dispute involves no conflict of interest between the trustee and the beneficiaries, or between the beneficiaries themselves, a trustee may sue or defend in the trustee's own name when, either by express grant or necessary implication, that power is vested in the trustee.  In addition, in the absence of a conflict of interest, or of a pleading that they are inadequately represented, the beneficiaries who did not participate at trial are not considered necessary parties to the case.[10]

---

[9]     We construe the district court's disposition as a dismissal for lack of subject matter jurisdiction.  *See infra* pp. 11-12 and note 12.

[10]    The doctrine of virtual representation relates to relationships other than that between a trustee and beneficiary.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 41(1) (1982) (listing the occasions when the doctrine of virtual representation controls); 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4457 (1981 & Supp. 1998) (discussing the development of the doctrine of virtual

*Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 833 (Tex. App.))Amarillo 1993, no writ); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 41(1)(a) (1982) (stating that the doctrine of virtual representation applies when "[a] person is represented by a party who is . . . [t]he trustee of an estate or interest of which the person is a beneficiary"). The Government and its co-defendants maintain that the notice to FWNB of the condemnation action against the mineral interests in 1955 bound Harris and the McMullens because the doctrine made the bank, "as trustee, . . . the only necessary party to the condemnation proceeding." In other words, they believe the doctrine should work to impute FWNB's knowledge of the adverse claim, acquired decades before this case began, to Harris and the McMullens.

The QTA permits civil actions contesting a right, title or interest in real property claimed by the United States. *See* 28 U.S.C. §§ 2409a(a) & (d), 1346(f) (1994). To foreclose "stale challenges to the United States' claim[s] to real property, whatever the merits of those challenges," it includes a statute of limitations. *United States v. Mottaz,* 476 U.S. 834, 851, 106 S. Ct. 2224, 2234, 90 L. Ed. 2d 841, ___ (1986). That provision

---

representation). For example, it controls when the earlier case concerned "[t]he representation of a class of persons similarly situated, designated as such with approval of the court, of which the person is a member." RESTATEMENT, *supra* § 41(1)(e). The Fourth Circuit has decided whether or not judgments in earlier condemnation actions bind QTA claimants by looking to see if those proceedings fall within that particular situation. *See Klugh v. United States,* 818 F.2d 294, 300-01 (4th Cir. 1987) (observing that "[t]he doctrine of virtual representation is recognized by federal and state law alike in this case" and applying it).

states, "Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g) (1994). It identifies "the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States" as the time when an action accrues.[11] *Id.*

The QTA is a waiver of sovereign immunity. *See Block v. North Dakota ex rel. Board of Univ. and Sch. Lands,* 461 U.S. 273, 280, 103 S. Ct. 1811, 1816, 75 L. Ed. 2d 840, ___ (1983). Therefore, the measure's statute of limitations manifests a condition to this waiver. *See Mottaz,* 476 U.S. at 841, 106 S. Ct. at 2229, 90 L. Ed. 2d at ___ (QTA case). As such, it must be construed strictly in favor of the Government. *See Block,* 461 U.S. at 287, 103 S. Ct. at 1819-20, 75 L. Ed. 2d at ___ ("when Congress attaches conditions to legislation waiving sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied"). Moreover, because it circumscribes the scope of a waiver of sovereign immunity, the statute of limitations manifests a jurisdictional prerequisite, rather than an affirmative defense. *See Mottaz,* 476 U.S. at 841, 106 S. Ct. at 2229, 90 L. Ed. 2d at

---

[11] "Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp v. United States,* 636 F.2d 279, 283 (10th Cir. 1980).

___; *see also Block,* 461 U.S. at 287, 292, 103 S. Ct. at 1823, 75 L. Ed. 2d at ___ (holding that, if the suit was barred by the QTA's statute of limitations, then "the courts below had no jurisdiction to inquire into the merits").

Courts interpret the QTA "in accordance with principles of federal law." *Vincent Murphy Chevrolet Co. v. United States,* 766 F.2d 449, 451 (10th Cir. 1985). "[W]hile [they] . . . may properly look to state law as an aid in determining the application of statutory language to specific facts, such state law should be '[c]ompatible with the purpose of [the legislation so as] to find the rule that will best effectuate federal policy.'" *Id.* Thus, state law may provide courts with insight about "ownership, transfer and title to real estate." *Amoco Prod. Co. v. United States,* 619 F.2d 1383, 1387 (10th Cir. 1980); *see Prater v. United States,* 618 F.2d 263, 263 (5th Cir. 1980) (holding plaintiff's evidence in QTA case "sufficient to establish the promise to reconvey, and thus raise a claim for equitable title [under Georgia trust law] for jurisdictional purposes"). It also may assist in discerning knowledge of the Government's claim. *See Amoco,* 619 F.2d at 1387 ("Local practices and local rules are particularly indicative of whether a party should have known a relevant fact.").

We construe the district court's grant of summary judgment as a dismissal for lack of subject matter jurisdiction because of the

jurisdictional nature of QTA limitations.[12]  *See Valley v. Rapides Parish Sch. Dist.,* 145 F.3d 329, 331-32 (5th Cir. 1998) ("Subject-matter jurisdiction can be raised at any time, even sua sponte."). Dismissal for lack of subject matter jurisdiction arises when "it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim which would entitle [them] to relief." *Hobbs v. Hawkins,* 968 F.2d 471, 475 (5th Cir. 1992).  Where the dismissal rests on the complaint and the undisputed facts, such as here, we decide the correctness of the district court's application of the law and whether or not the facts on which it relied were indeed undisputed.  *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1983).  Our review of the district court's application of the law is de novo.  *See Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir. 1990).

We conclude that this QTA action accrued more than twelve years before its commencement.  FWNB learned about the United States' claim to the mineral interests in 1955, when it was served, as trustee under Langille's will, with a notice of the condemnation action.  It consequently knew of the Government's adverse action in 1966, when McMullen Oil conveyed to FWNB, as trustee under

---

[12]    Granting summary judgment is an inappropriate way to effect a dismissal for lack of subject matter jurisdiction.  *See Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157 (5th Cir. Unit B Mar. 1981) (finding a dismissal based on an exception to a waiver of sovereign immunity to implicate subject matter jurisdiction) ("Since the granting of summary judgment is a disposition on the merits of the case, a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction.").

Langille's will, any rights it held in the mineral interests. These facts operated to put Harris and the McMullens on notice of the Government's claim, given FWNB's authority to sue or defend on behalf of the Langille Trust and the absence of any conflict of interest between FWNB or Langille's children and them. *Cf. Towson v. Texas Elec. Serv. Co.,* 371 S.W.2d 581, 582-83 (Tex. Civ. App.))Eastland 1963, writ ref'd n.r.e.) (applying doctrine of virtual representation in a state condemnation case). Harris and the McMullens, therefore, were aware of the Government's claim to the mineral interests at least thirty years before this suit was brought. This situation renders the present title challenge barred by the QTA's twelve-year limitations period.

IV

Bank One, Harris' heirs and the McMullens also argue that the 1970 order was not a final judgment. We have resolved this issue already, agreeing with the district court. *See Bank One* at 2-4. We cannot revisit it; res judicata prevents us from doing so. *See* 5th Cir. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata . . . ."); *United States v. Timmons,* 672 F.2d 1373, 1377-78 (11th Cir. 1982) (finding res judicata to bind as to issue resolved in earlier case).

V

We AFFIRM the dismissal of this case for lack of jurisdiction.

-13-