

# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00392-CV

**STUART FETTER,**

　　　　　　　　　　　　　　　　　　　　**Appellant**

 **v.**

**MARSHALL BROWN, ALLISON MADISON
AND LAUREN WILSON,**

　　　　　　　　　　　　　　　　　　　　**Appellees**

**From the 414th District Court
McLennan County, Texas
Trial Court No. 2011-1908-5**

## MEMORANDUM  OPINION

In two issues, appellant, Stuart Fetter, individually and as trustee of the Fetter Family Living Trust, complains about a judgment awarding $1,372,119.74 in actual damages, $686,059 in punitive damages, and $228,523.60 in pre-judgment interest to appellees, Marshall Brown, Allison Madison, and Lauren Wilson.  Specifically, Stuart contends that:  (1) the trial court's judgment and damages award are not supported by sufficient evidence; and (2) the trial court erred by awarding the beneficiaries of the

trust a money judgment in their individual capacities, rather than reimbursing the trust. We affirm.

## I. BACKGROUND

On May 22, 1997, James Milton Fetter and Florence Rubinsky Fetter, parents of Stuart and grandparents of appellees, entered into a trust agreement—the Fetter Family Living Trust. Pursuant to the trust agreement, Florence was appointed trustee. Additionally, Stuart and his sister, Annette Fetter Brown, were named as beneficiaries of the trust—each receiving a 50% share of the proceeds from the trust. Moreover, section 6.07(a) of the original trust agreement indicated that Lauren—the daughter of Florence's youngest daughter, Lana Thompson—would receive a $5,000 distribution upon the death of James and Florence. Annette is the mother of Marshall and Allison; however, Annette passed away on December 13, 2003. According to the original trust agreement, the descendants of Annette and Stuart would receive their share per stirpes upon the death of Annette or Stuart. Thus, Annette's 50% share of the trust proceeds passed to Marshall and Allison in equal shares.

After the trust was created, James passed away. Subsequently, on April 14, 2004, Florence executed an amendment to the original trust agreement. In this amendment, Florence authorized a $25,000 distribution to Lauren, rather than the originally-designated $5,000 distribution, upon the death of Florence, who was the surviving spouse at the time. Furthermore, in the amendment, Florence named Stuart as co-

trustee, effective April 15, 2004.[1]  Stuart signed an acceptance by co-trustee on April 15, 2004.  As co-trustee, Stuart received bank statements for the trust and had banking privileges corresponding with the trust.  On February 14, 2010, Florence passed away.

At trial, Allison testified that she was very close to Florence and that she was Florence's main caregiver.  Allison filled Florence's prescriptions and helped her move from a retirement community to a nursing home.  During this move, Allison took possession of trust statements that Florence had.  Allison believed it to be suspicious that there were no trust statements later than July 2006.  Allison also recounted incidents where she had to pay for Florence's prescriptions because Florence's credit card was declined.  In any event, several months after Florence's death, Allison was contacted by the funeral home to pay the bill for Florence's funeral.  Allison was shocked that the funeral bill had not been paid by Stuart, the co-trustee who lives in South Carolina.  Later, Allison learned that Stuart had not paid the nursing home for Florence's care.  Eventually, the nursing home sued Allison for the expenses associated with Florence's care.

Given this, Allison became concerned about the financial condition of the trust.  On July 23, 2010, counsel for Marshall, Allison, and Lauren made a demand for an accounting of the trust.  Stuart responded to the demand for accounting by sending the beneficiaries brokerage and checking account statements for the trust from 2006 until the closing of the account, trust income tax returns from 2002 to 2006, and Florence's

---

[1] Florence also signed a power of attorney appointing Stuart as her attorney-in-fact as of April 28, 1997.

individual tax returns for years 2004 through 2007. Believing that Stuart had "looted" the trust, appellees filed suit against Stuart.

In his deposition, Stuart testified that the documents provided to appellees were his full and accurate accounting of the trust from 2006 until the present. Specifically, Stuart stated that he had "sent . . . everything that I thought you asked for." Stuart also stated that he believed this was in compliance with sections 113.151 and 113.152 of the Texas Property Code, which outline the duties of the trustee to account. *See* TEX. PROP. CODE ANN. §§ 113.151-.152 (West 2007). In addition, Stuart acknowledged making wire transfers out of the trust and into his personal banking account. Though he did not recall most of the transactions, Stuart characterized these transfers as gifts. He later admitted that no one prepared gift-tax returns for these supposed gift transfers.

In its findings of fact and conclusions of law, the trial court detailed numerous transactions between Stuart and the trust and determined that:

> 15. Trustee [Stuart] failed to comply with his duty as trustee because he failed to act in good faith and failed to act in accordance with the purposes of the Trust. Good faith means an action that is prompted by honesty of intention and a reasonable belief that the action was probably correct. Trustee failed to prove that: 1) his self-dealing acts in taking the money belonging to the trust were fair and equitable to the beneficiaries of the Trust; 2) he made a reasonable use of the confidence placed in him by the settlor; 3) he acted in good faith and in accordance with the purposes of the Trust in connection with the transactions in question; 4) he placed the interests of the beneficiaries before his own[;] 5) he did not use the advantage of his position to gain any benefit for himself at the expense of the beneficiaries[,] and 6) he did not place himself in any position where his self-interest might conflict with his obligations as trustee. Trustee failed to fully and fairly disclose to the beneficiaries all material facts known to Trustee concerning the transfers of cash from the Trust that affected the beneficiaries' rights.

16.  Trustee breached his fiduciary duty to the beneficiaries of the Fetter Family Living Trust by failing to account for his actions as trustee, by committing self-dealing acts, including taking all of the money from the Trust for his own personal benefit, and by failing to disclose his breaches of fiduciary duty to the beneficiaries of the Trust[.]

The trial court concluded that appellees were entitled to actual damages in the amount of $1,372,119.74.  The trial court also concluded that Stuart acted with actual malice and awarded punitive damages in the amount of $686,059 and pre-judgment interest in the amount of $228,523.60.  Stuart was removed as trustee, and Allison was appointed successor trustee of the trust.  This appeal followed.

## II.    THE TRIAL COURT'S JUDGMENT AND DAMAGES AWARD

In his first issue, Stuart asserts that the trial court erred in admitting evidence of bank statements and testimony pertaining to the bank statements over his hearsay objections.  And because the trial court purportedly erred in admitting evidence pertaining to the complained-of bank statements, and because appellees' case relied heavily on the bank statements, Stuart argues that the evidence supporting the trial court's judgment is insufficient.

### A.    Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury verdict.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).  We thus review findings of fact by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question.  *Id.*

An appellate court may sustain a legal-sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally-sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When considering the factual sufficiency of the evidence to support an adverse ruling on which the party challenging the judgment did not have the burden of proof,

we examine all of the evidence and "set aside the [finding] only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). Under either standard of review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see Wilson*, 168 S.W.3d at 819.

## B.      Hearsay

As stated earlier, Stuart asserts that the bank statements and his testimony regarding the bank statements should not have been admitted into evidence because the evidence contains inadmissible hearsay. We disagree.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). The "hearsay rule" excludes the admission of hearsay evidence. *Id.* at R. 802. However, Texas Rule of Evidence 801(e) describes statements which are not hearsay. *See id.* at R. 801(e). This list includes admissions by a party-opponent. *See id.* at R. 801(e)(2). In particular, rule 801(e)(2)(B) provides that a statement is not hearsay if it is offered against a party opponent and it is "a statement of which the party has manifested an adoption or belief in its truth." *Id.* at R. 801(e)(2)(B). The proponent of allegedly hearsay evidence has the burden of showing that the testimony fits within an exception to the general rule prohibiting the admission of hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n.5 (Tex. 2004).

Here, appellees demanded an accounting of the trust from the trustee, Stuart, under section 113.151(a) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 113.151(a) (providing that, among other things, "[a] beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later"). In response, Stuart provided appellees with Bank of America statements and other documents, including tax returns for the trust and for Florence. In his deposition, Stuart testified that he had provided "everything that I thought you asked for" and that he had complied with appellees' statutory demand for accounting. Stuart further stated: "The ones you asked for, I got for you from the bank." Additionally, Stuart noted that he thought he was in compliance with sections 113.151 and 113.152 of the Texas Property Code—the accounting provisions for trusts—because he provided the bank statements and income-tax returns. At trial, appellees proffered the bank statements and income-tax returns provided by Stuart as exhibits, and the trial court admitted the exhibits into evidence over Stuart's hearsay objections.

The statements made by Stuart during his deposition indicate that he believed the bank and income-tax statements to be an accurate representation of the financial condition of the trust and in satisfaction of his duty to account as trustee. Or, in other words, we conclude that the bank statements that Stuart, a party opponent, provided during discovery and Stuart's commentary about the bank statements constitute statements "of which the party has manifested an adoption or belief in its truth." TEX. R. EVID. 801(e)(2)(B); *see In re A.J.J.*, No.2-04-265-CV, 2005 Tex. App. LEXIS 3058, at *16

(Tex. App.—Fort Worth Apr. 21, 2005, no pet.) (mem. op.), *overruled, in part, on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011).[2]  Accordingly, we hold that the bank statements and Stuart's testimony about the bank statements constitute admissions of a party opponent and are not hearsay.  *See* TEX. R. EVID. 801(e)(2)(B); *see also Ramirez*, 159 S.W.3d at 908 n.5; *In re A.J.J.*, 2005 Tex. App. LEXIS 3058, at *16.

## C.     Excessive Damages

Furthermore, Stuart argues that the trial court's damages award is excessive because it awarded 100% of the remainder of the trust estate to appellees, even though Stuart retained a 50% interest in the trust.

We analyze a complaint of excessive damages using the same standard of review applicable to other factual-sufficiency challenges.  *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998).  Here, the parties are correct that the trust documents state that Stuart retains a 50% interest in the trust proceeds and that appellees retain the remaining 50% interest in the trust proceeds.  However, as we determine later, the

---

[2] Relying on Texas Rule of Evidence 802(e)(2)(B), the Fort Worth Court of Appeals noted the following:

> Robert's final argument under his first issue is that the trial court erroneously admitted into evidence Jean's exhibits 1, 3, and 4.  Robert asserts that exhibit 1, which consists of copies of bank statements from his concessions business bank account, should not have been admitted because it is hearsay.  Robert acknowledged at the modification hearing, however, that he had produced the bank statements to Jean in response to discovery requests.  Therefore, the bank statements were not hearsay because they were admissible as admissions by a party opponent.

*In re A.J.J.*, No. 2-04-265-CV, 2005 Tex. App. LEXIS 3058, at *16 (Tex. App.—Fort Worth Apr. 21, 2005, no pet.) (mem. op.), *overruled, in part, on other grounds by Iliff v. Iliff*, 339 S.W.3d 74 (Tex. 2011) (citing TEX. R. EVID. 801(e)(2)(B)).  Similarly, in the instant case, Stuart acknowledged in his deposition testimony that he produced the complained-of bank records to appellees in response to their statutory demand for accounting.  *See id.*; *see also* TEX. R. EVID. 801(e)(2)(B).

recovery in this case belonged to the trust, not appellees in their individual capacity. Accordingly, there is no need to reduce the damages award to net out Stuart's 50% interest in the trust. That will be done when the trust terminates and the successor trustee winds up the trust affairs. *See Sorrel v. Sorrel*, 1 S.W.3d 867, 870-71 (Tex. App.—Corpus Christi 1999, no pet.) (citing 89 C.J.S. *Trusts* § 96 (1955)). Accordingly, based on the foregoing, we conclude that the trial court's damages award is supported by sufficient evidence. *See Ellis*, 971 S.W.2d at 406; *Cain*, 709 S.W.2d at 176.

### III. WHETHER THE BENEFICIARIES OF A TRUST CAN RECOVER IN THEIR INDIVIDUAL CAPACITIES

In his second issue, Stuart contends that the trial court erred in awarding the beneficiaries of the trust a money judgment in their individual capacities instead of reimbursing the trust.

Section 115.011(a) of the Texas Property Code provides that "[a]ny interested party may bring an action under Section 115.011 of this Act." TEX. PROP. CODE ANN. § 115.011(a) (West Supp. 2014). The Texas Property Code defines an "interested person" as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." *Id.* § 111.004(7) (West Supp. 2014). Here, it is undisputed that appellees are beneficiaries under this trust.

However, "[d]uring the existence of the trust, legal title to the res is in the trustee and equitable title is in the beneficiaries." *Sorrel*, 1 S.W.3d at 871 (citing *Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, no writ)). However, legal title

held by the trustee and the equitable title held by the beneficiaries merge in the beneficiaries and the beneficiaries acquire full ownership interest in the property when the trust terminates. *Id.* (citing *Shearrer*, 952 S.W.2d at 78).

In its findings of fact and conclusions of law, the trial court removed Stuart as trustee and appointed Allison as successor trustee. Implicit in this conclusion is that the trust did not terminate. Indeed, the provisions of section 8.08 of the trust, which pertains to early termination, do not appear to be applicable here.[3] Accordingly, we agree that recovery in this case should be paid to the successor trustee for continued management in accordance with the trust agreement. In other words, we conclude that it is the trust that is entitled to recover the damage award in this case, not appellees in

---

[3] Section 8.08 of the trust document provides the following:

8.08 **EARLY TERMINATION OF TRUST.** The Trustee is empowered to terminate this Trust when all Trust Beneficiaries are adults and the amount of principal and income on hand in the Trust is so small that the corporate Trustee serving would be entitled only to its minimum fees then uniformly charged for like services for small trust estates, after first considering all financial or other special advantages to the beneficiary or beneficiaries of continuing the trust estate, which are known to the Trustee. The Trustee's judgment shall be final, binding and conclusive upon all parties ever interested hereunder and distribution of the trust funds in the manner herein provided shall relieve the Trustee of any further responsibility with respect to such funds.

(Emphasis in original).

However, section 6.08(c), entitled "Final Distributions," states that:

Subject to the provisions of paragraph 6.12 of this Trust, upon each beneficiary's attainment of age twenty-five (25) years, the Trustee shall distribute to the beneficiary his or her share of all trust funds then on hand, the amount of such distribution to be determined as of the date of distribution. All such distributions under this paragraph shall be made outright and free of trust to the beneficiary.

(Emphasis in original). Based on the evidence adduced at trial and the trial court's findings of fact and conclusions of law, we have no assurance that the trust in this case has terminated.

their individual capacities. This conclusion comports with the final judgment and the trial court's conclusions of law.[4] Therefore, based on the foregoing, we overrule Stuart's second issue.

## IV.   CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 9, 2014
[CV06]



---

[4] In its final judgment, the trial court stated that:

**IT IS FURTHER ORDERED** that Stuart Fetter, and his attorneys, attorneys-in-fact, agents, and representatives hold all real property, personal property, cash and all other assets belonging to the Fetter Family Living Trust, commingled and otherwise, as constructive trustee for the [Fetter Family] Living Trust and that Stuart Fetter, and all other parties and their attorneys, attorneys-in-fact, agents[,] and representatives are hereby **ORDERED** to immediately deliver all of such assets to Allison Madison, Successor Trustee of the Fetter Family Living Trust up to the amount of the judgment.

(Emphasis in original). The trial court's conclusions of law mirror this language.