Opinion issued June 27, 2023



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00080-CV

————————————

**DAVID HERBIG, TRUSTEE OF THE WELCH FAMILY TRUST C, Appellant**

**V.**

**JEANNE MANRY WELCH, TRUSTEE OF THE WELCH MANRY FAMILY TRUST, Appellee**

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2020-07680**

---

## O P I N I O N

Appellant David Herbig, trustee of the Welch Family Trust C, appeals from the trial court's final judgment which made final an interlocutory summary judgment order entered in favor of appellee Jeanne Manry Welch, trustee of the Welch Manry

Family Trust, on her declaratory judgment claims brought under Chapter 37 of the Texas Civil Practice and Remedies Code, the Uniform Declaratory Judgments Act (UDJA). In two issues on appeal, Herbig argues that Jeanne lacks standing to bring her claims and that the trial court erred in granting summary judgment on Jeanne's claims.

Because we conclude that the trial court lacked jurisdiction over the Welch Family Trust B, a party not before the trial court, the relief awarded against that trust in the trial court's order is void. Accordingly, we vacate the portion of the trial court's order voiding the conveyance made to the Welch Family Trust B and affirm the remainder of the trial court's final judgment.

**Background**

Richard Welch and his wife, Margaret, created the Welch Family Trust (WFT) in 1993. At the time of its execution, Richard and Margaret were trustors, beneficiaries, and co-trustees of the WFT. During their life, the WFT Trustee could make distributions of income or principal to Richard, Margaret, and their children.

Margaret died in 2015. Upon her death, the WFT provided that the trust assets would be divided into two interests of equal value—Richard's one-half (as the surviving spouse) and Margaret's one-half (as the deceased spouse)—and from there, divided into three subtrusts, the Welch Family Trusts A, B, and C. As the surviving spouse, Richard's one-half interest in the trust property passed to "the

2

surviving Trustor [Richard], as Trustee of the Welch Family Trust C." Margaret's portion of the then-trust property would flow into Welch Family Trust A and B.

In general terms, the Welch Family Trust A was designed to provide a gift that would cover all funds necessary for federal estate tax purposes. The "rest and residue" of the Welch Family Trust A, after addressing the federal estate tax liabilities, would be for the benefit of the surviving spouse, Richard, including for his "health, education, maintenance and support or to pay any federal income or gift taxes imposed on him." The "rest and residue" was distributed into the Welch Family Trust B. Richard, as the surviving spouse, also had special power of appointment over the Welch Family Trust B, which included transferring remaining trust property to descendants by will or other instruments or documents.

As to the Welch Family Trust C, Richard was the trustee and beneficiary, as the sole surviving spouse, which entitled him to the income and, if necessary, the principal, for his health, education, maintenance, or support. Upon Richard's death, as the surviving spouse, the WFT directed that the trustee "shall distribute all assets remaining in the various Trusts established in Article III in accordance with any powers of appointment exercised by the surviving Beneficiary. To the extent not exercised, such property will be distributed to the descendants of Trustors on a per stirpes basis."

In the event that Richard was unwilling or unable to serve as trustee of any WFT, two other persons were appointed as successor trustees. While Richard and Margaret were still living, two amendments to the WFT were made to change the successor trustees, including Lewis Sims, to be appointed if the surviving spouse was unwilling or unable to proceed as trustee of any of the WFTs. The last such amendment designated appellant David Herbig as a successor trustee.

After Margaret died, Richard married Jeanne Manry Welch in May 2017. In December 2017, Jeanne and Richard established their own trust, the Welch Manry Family Trust (WMFT), for their mutual benefit, naming themselves as co-trustees. In March 2019, Richard funded the WMFT with assets from the Welch Family Trust C. Specifically, Richard transferred:

1. An undivided ½ interest in 219.66 acres of land in Blanco County,

2. A single-family home in Fredericksburg, Texas (the Acorn Street Property),

3. 632 acres of land in Pecos and Reeves Counties, Texas,

4. Royalty rights related to land in La Salle County, Texas, and

5. 690 and 458/1000 shares of United Lands capital stock to the WMFT.

Richard died on September 9, 2019. After his death, the WMFT continued for Jeanne's benefit, and she became the sole trustee of the WMFT. As trustee, she had the authority to transfer property out of the WMFT, make distributions of property

4

or cash, exchange or sell all or any part of the trust property, and direct investments of the trust.

In October 2019, one month after Richard's death, Jeanne conveyed the properties listed below from the WFMT back to the Welch Family Trust C.

1. The Acorn Street Property in Fredericksburg, Texas, to Lewis Sims, successor trustee of the Welch Family Trust C;

2. 632 acres of land in Pecos and Reeves Counties, Texas, to Lewis Sims, successor trustee of the Welch Family Trust C;

3. Royalty rights related to land in La Salle County, Texas, to Lewis Sims, successor trustee of the Welch Family Trust C; and

4. 690 and 458/1000 shares of United Lands capital stock from the WMFT to the Welch Family Trust C.

She also made one conveyance to the Welch Family Trust B—an undivided ½ interest in 219.66 acres of land in Blanco County, Texas, to Lewis Sims, successor trustee of the Welch Family Trust B.

In early 2020, Jeanne sued Herbig, in his capacity as trustee of the Welch Family Trust C, seeking declaratory judgments that the WFT, including Welch Family Trusts A, B, and C, terminated on Richard's death and that "any purported transfers of property and assets from the Welch Manry Family Trust back into any of the Welch Family Trusts (including Trust B and Trust C) are void."

Jeanne moved for traditional summary judgment on her declaratory judgment claims. The trial court granted summary judgment in favor of Jeanne. In its order, the trial court made the following declarations:

5

- "[U]nder its unambiguous terms, the Welch Family Trust C terminated immediately upon the death of Richard C. Welch";

- "[U]pon termination of the Welch Family Trust C, the trustee thereof was restricted in his actions as Trustee to winding up the affairs of the said Trust"; and

- "[T]he Trustee of the Welch Family Trust C was without authority to accept or receive property to add to the corpus of the said trust following the death of Richard C. Welch."

The trial court also declared the following conveyances "void" and set them aside:

- Warranty Deed from grantor Jeanne F. Welch a/k/a Jeanne F. Manry, Trustee of the Welch Manry Family Trust to grantee Lewis Sims, Successor Trustee of the Welch Family Trust C dated October 24, 2019, filed in the Official Records of Pecos County, Texas under File No. 2019-168029 WD;

- Warranty Deed from grantor Jeanne F. Welch a/k/a Jeanne F. Manry, Trustee of the Welch Manry Family Trust to grantee Lewis Sims, Successor Trustee of the Welch Family Trust B dated October 7, 2019, filed in the Official Public Records of Blanco County, Texas under File No. 193583;

- Royalty Deed from grantor Jeanne F. Welch a/k/a Jeanne F. Manry, Trustee of the Welch Manry Family Trust to grantee Lewis Sims, Successor Trustee of the Welch Family Trust C dated October 24, 2019, filed in the Official Records of La Salle County, Texas under File No. 00132872;

- Warranty Deed from grantor Jeanne F. Welch a/k/a Jeanne F. Manry, Trustee of the Welch Manry Family Trust to grantee Lewis Sims, Successor Trustee of the Welch Family Trust C dated October 24, 2019, filed in the Official Public Records of Gillespie County, Texas under File No. 20195926;

- 699 and 458/l000s Shares (Six Hundred Ninety Shares and Four Hundred Fifty Eight One-Thousandths of a Share) in United Lands

Company, Inc. Capital Stock, originally represented by United Lands
Company, Inc. Share Certificate No. 1020 dated March 8, 2018.

The trial court reserved judgment on Jeanne's request for attorney's fees pursuant to the UDJA and dismissed with prejudice Herbig's counterclaims for slander of title and declaratory judgment. Herbig moved for reconsideration, which the trial court denied.

Following the trial court's entry of interlocutory summary judgment, Jeanne moved for entry of final judgment, in which she nonsuited her remaining claim for attorney's fees and moved to dismiss Herbig's remaining counterclaim for an accounting under Texas Property Code Section 113.151(b) for lack of subject matter jurisdiction. On January 8, 2022, the trial court entered final judgment, in which the trial court recognized Jeanne's nonsuit, ordered Herbig take nothing on his counterclaims, and ordered that Jeanne be entitled to all relief previously granted in the interlocutory summary judgment order. This appeal followed.

## Standing

In his first issue, Herbig argues that the trial court erred in granting Jeanne's motion for summary judgment because she is not an interested person under Texas Property Code Section 115.001(a), and therefore, lacks standing to challenge his actions as trustee of the WFT. Herbig contends that, under Section 115.001, courts may only intervene in the administration of a trust when an interested person invokes the trial court's jurisdiction. *See* TEX. PROP. CODE § 115.001(c) ("The court may

7

intervene in the administration of a trust to the extent that the court's jurisdiction is invoked by an interested person or as otherwise provided by law."). An interested person is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust." *Id.* § 111.004(7). Because Jeanne is not an interested person, as she is not a beneficiary or trustee of the WFT trust, does not have an interest in or claim against the trust, and is not affected by the administration of the trust, Herbig asserts that she did not have standing to bring her claims, and therefore, the trial court lacked subject matter jurisdiction.

In response, Jeanne contends Herbig waived this argument because, under a recent Texas Supreme Court decision, the issue of whether Jeanne is an interested person is a question of capacity, not standing, which does not implicate the trial court's subject matter jurisdiction. *See Berry v. Berry*, 646 S.W.3d 516 (Tex. 2022). Because Herbig did not raise the "interested person" argument before the trial court, Jeanne argues that he has waived that argument on appeal.

Although Herbig contends his first issue raises a question of Jeanne's "standing," thus implicating the trial court's subject matter jurisdiction, Texas courts have made a distinction between constitutional standing and the requirement that parties "fall within the class of persons statutorily authorized to bring the causes of action they have asserted." *Id.* at 527; *see also In re K.S.*, 492 S.W.3d 419, 422–23

8

(Tex. App.—Houston [14th Dist.] 2016, pet. denied) (explaining distinction between constitutional requirement that plaintiff have standing, which implicates court's jurisdiction and may be raised for first time on appeal, and statutory restrictions on who may bring suit, which affect plaintiff's right to relief rather than court's jurisdiction).

Standing is a constitutional prerequisite to maintaining a suit under Texas law. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The test for constitutional standing in Texas requires that there be a "real controversy between the parties, which . . . will be actually determined by the judicial declaration sought." *Id.* at 446. This issue focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Constitutional standing is required for the court to have subject-matter jurisdiction; thus, it cannot be waived and may be raised by a party or a court at any time, including on appeal. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445. To demonstrate standing, the plaintiff is required to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* at 446.

In *Berry*, the parties disputed whether the plaintiffs fit within the definition of "interested person" under Section 115.001 and, like Herbig here, characterized this issue as one of "standing." *Berry*, 646 S.W.3d at 527. The Texas Supreme Court

explained that "'standing' has historically not always been used in its 'proper, jurisdictional sense.'" *Id.* (quoting *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 774 (Tex. 2020)). "To have standing in the 'proper, jurisdictional sense,' a plaintiff must allege, among other things, a concrete, particularized injury in fact." *Id.* (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012)). The Court noted that the parties focused their arguments "exclusively on whether [the plaintiffs] fall within the class of persons statutorily authorized to bring the causes of action they have asserted," not on whether the plaintiffs had satisfied their burden to allege a concrete, particularized injury, as is required for constitutional standing. *Id.* Because the parties raised only a statutory-interpretation question, the Court confined its inquiry to that issue. *Id.*

Resolving the question of whether the plaintiffs fell within the class of persons statutorily authorized under Section 115.001 to bring the causes of action asserted "may overlap with, but does not necessarily implicate, questions of standing bearing on subject-matter jurisdiction." *Id.* (citing *Pike*, 610 S.W.3d at 775). For instance, the Court explained, "the statutory inquiry into whether an unnamed beneficiary is an 'interested person' may resemble in some respects the jurisdictional inquiry into whether the unnamed beneficiary has alleged a concrete injury, and in that context it may be addressed in a jurisdictional plea." *Id.* at 527 n.3. But the Court emphasized that these two "are nevertheless distinct inquiries." *Id.*; *see also Tex. Bd. of*

10

*Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 566–67 (Tex. 2021) ("The Board characterizes § 2001.038(a) as a 'statutory standing' provision. Constitutional standing is a prerequisite for subject matter jurisdiction . . . . But last Term in *Pike v. EMC Management, LLC*, we discouraged the use of the term *standing* to describe extra-constitutional restrictions on the right of a particular plaintiff to bring a particular lawsuit."); *Pike*, 610 S.W.3d at 774 ("[T]he question whether a plaintiff has established his right to go forward with [his] suit or satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it. Thus, a plaintiff does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claim; he lacks standing [when] his claim of injury is too slight for a court to afford redress." (internal citations and quotations omitted)); *Eagle Rock Timber, Inc. v. Rock Hard Rental, LLC*, No. 04-21-00372-CV, 2023 WL 2506431, at *3 (Tex. App.—San Antonio Mar. 15, 2023, no pet. h.) ("The statutory question of whether SRC is an 'obligor or debtor' under Section 12.003(a)(8) is an extra-constitutional question and, therefore, not properly characterized as jurisdictional under *Pike*.").

Here, Herbig cites to several cases in support of his argument that this issue is jurisdictional, including cases from this Court. *See Newding v. Lambert*, No. 01-19-00899-CV, 2020 WL 6731658, at *3 (Tex. App.—Houston [1st Dist.] Nov. 17,

2020, pet. denied) (mem. op.) ("If one is not an 'interested person,' then she lacks standing—a jurisdictional defect—to bring a trust-related action."); *In re Duddlesten*, No. 01-18-00561-CV, 2018 WL 6694710, at *4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) ("[The plaintiff] is not an 'interested person' under the Property Code because she is not a beneficiary or trustee of the Marital Trust and does not otherwise have a legal or equitable interest in the trust's assets or administration. She does not have standing to sue individually."); *Gonzalez v. De Leon*, No. 04-14-00751-CV, 2015 WL 5037396, at *5–8 (Tex. App.—San Antonio Aug. 26, 2015, pet. dism'd) (mem. op.) (holding that because settlor of family trust was not interested person and administration of trust did not affect her interests, settlor "lacked standing as a matter of law to prosecute her bill of review"); *Lee v. Rogers Agency*, 517 S.W.3d 137, 159–60 (Tex. App.—Texarkana 2016, pet. denied) ("To begin with, a settlor who '[u]nder the terms of the . . . Trust . . . do[es] not manage any of the aspects of the . . . Trust and do[es] not stand to inherit any of the trust assets' is not an 'interested person' who has standing to bring an action against a trustee or to bring other proceedings related to a trust under the Texas Property Code."); *Moon v. Lesikar*, 230 S.W.3d 800, 803 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting contingent beneficiary "would appear to meet the definition of an interested person with standing to bring suit against a trustee for breach of fiduciary duty.").

However, each of these cases was decided before the Texas Supreme Court's decision in *Berry*, which distinguished the precise issue raised in this appeal—whether Jeanne is an interested person under Section 115.001, which does not implicate subject matter jurisdiction—with constitutional standing, which does. Accordingly, we disagree with Herbig that whether Jeanne is an interested person under Section 115.001 is a jurisdictional question of constitutional standing that can be raised at any time, including for the first time on appeal. Because Herbig did not raise this statutory interpretation issue below, he has waived it on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *cf. Eagle Rock Timber*, 2023 WL 2506431, at *3–4 (holding that appellant's argument that plaintiff did not have standing to bring claim under fraudulent lien statute because it was not an "obligor or debtor" was not jurisdictional and therefore not preserved on appeal where appellant did not raise that issue in trial court); *In Interest of J.W.G.*, No. 14-17-00389-CV, 2017 WL 5196223, at *6 (Tex. App.—Houston [14th Dist.] Nov. 9, 2017, pet. denied) (mem. op.) (holding that department's argument that grandfather did not have standing to intervene in lawsuit "does not implicate the trial court's jurisdiction, but rather concerns whether [g]randfather met the statutory requirements for maintaining suit, it may not be raised for the first time on appeal" and was therefore not preserved).

To the extent that Herbig has made a constitutional standing argument on appeal, we conclude that Jeanne has alleged a particularized injury and relationship

13

with the lawsuit sufficient to establish standing to bring her declaratory judgment claims. As noted above, the plaintiff has the initial burden to plead facts establishing standing. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. A party has standing to sue if there is (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Austin Nursing Ctr.*, 171 S.W.3d at 848. More specifically, the UDJA provides that:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE § 37.004.

In her second amended petition, Jeanne alleged that:

- On December 1, 2017, Jeanne and Richard Welch established the Welch Manry Family Trust for their mutual benefit and named themselves as co-trustees.

- Soon after her husband Richard's death on September 9, 2019, Jeanne signed a number of documents in October 2019 purporting to convey title in certain properties and assets back to the Welch Family Trusts B and C.

- The terms of the Welch Family Trust provided that upon Richard's death the assets held in the Welch Family Trust (which includes the Welch Family Trusts A, B, and C) were to be distributed.

- As such, as a matter of law these trusts A, B, and C arising out of the Welch Family Trust ceased to exist on September 9, 2019 and Defendant Herbig, the trustee of each of these trusts was without any

14

further authority except to distribute the remaining assets and wind up these trusts.

Accordingly, Jeanne sought declarations that "the Welch Family Trust[,] including its Trusts A, B and C[,] terminated upon the death of Richard Welch on September 9, 2019," and that "any purported transfers of property and assets from the Welch Manry Family Trust back into any of the Welch Family Trusts (including Trust B and Trust C) are void."

Although Herbig focuses his arguments on Jeanne's purported interest, or lack thereof, in the WFT or its sub trusts, the crux of Jeanne's declaratory judgment action was to challenge the validity of the conveyances of property, which she made in her capacity as trustee of the WMFT to the Welch Family Trusts B and C. If these conveyances are void, as alleged by Jeanne and found by the trial court, then title to these properties and stock remained with the WMFT. Jeanne is the trustee of the WMFT and, in that capacity, was the grantor on the warranty and royalty deeds she seeks to declare void. Accordingly, we hold that Jeanne has alleged "a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *See Austin Nursing Ctr.*, 171 S.W.3d at 848.

We overrule Herbig's first issue.

**Transfers to the Welch Manry Family Trust**

In his second issue, Herbig argues that the trial court erred in granting Jeanne's motion for summary judgment because "there is no legal support for her assertion

15

that [Herbig] lacked authority to receive and accept assets Jeanne voluntarily conveyed to the WFT" and that these conveyances were void.

## A. Standard of Review

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *Unocal Pipeline Co. v. BP Pipelines (Alaska) Inc.*, 512 S.W.3d 492, 499–500 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 37.010 ("All orders, judgments, and decrees under this chapter may be reviewed as other orders, judgments, and decrees."). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Unocal Pipeline Co.*, 512 S.W.3d at 499–500. Here, because the trial court determined the declaratory judgment issue through summary judgment proceedings, we review the propriety of the trial court's declarations under the same standards we apply to summary judgment. *Id.* at 500.

We review de novo the trial court's ruling on a motion for summary judgment. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). In doing so, "[w]e review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Id.*

The party moving for traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of

16

law. TEX. R. CIV. P. 166a(c); *Eagle Oil & Gas*, 619 S.W.3d at 705. A plaintiff moving for traditional summary judgment must conclusively establish all essential elements of its claim. *Sheller v. Corral Tran Singh, LLP*, 551 S.W.3d 357, 362 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Once the moving party establishes its right to a traditional summary judgment, the burden shifts to the nonmoving party to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam); *see Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmoving party and indulge every reasonable inference in the nonmoving party's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

We also review de novo the trial court's legal conclusions on the construction of trusts. *See Gamboa v. Gamboa*, 383 S.W.3d 263, 273 (Tex. App.—San Antonio 2012, no pet.). We similarly ascertain a trust grantor's intent from the language contained in the trust's four corners and focus on the meaning of the words actually used, not what the grantor intended to write. *Soefje v. Jones*, 270 S.W.3d 617, 628 (Tex. App.—San Antonio 2008, no pet.). We must interpret a trust to give meaning to all its provisions and to enact the intent of the grantor. *See Hurley v. Moody Nat'l*

*Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

**B.      Analysis**

In its summary judgment order, the trial court made essentially three separate findings: (1) the Welch Family Trust C terminated on Richard's death; (2) following termination, Herbig's powers as trustee were restricted to winding up the trust and did not include the power to accept property into the trust after Richard's death; and (3) the conveyances made by Jeanne to the Welch Family Trust C after Richard's death were therefore void. On appeal, we are tasked with analyzing whether Jeanne established, as a matter of law, her entitlement to each of these declarations. We address each in turn.

**1.      Welch Family Trust C terminated on Richard's death**

Section 112.052 of the Texas Property Code states:

> A trust terminates if by its terms the trust is to continue only until . . . the happening of a certain event and . . . the event has occurred. If an event of termination occurs, the trustee may continue to exercise the powers of the trustee for the reasonable period of time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries. The continued exercise of the trustee's powers after an event of termination does not affect the vested rights of beneficiaries of the trust.

TEX. PROP. CODE § 112.052. In her motion for summary judgment, Jeanne pointed to the following language in Article IV of the WFT as evidence that it, and the sub trusts, terminated upon Richard's death:

18

IV. DISTRIBUTIONS UPON DEATH OF SURVIVING BENEFICIARY:

Upon the death of the surviving Beneficiary, the Trustee shall distribute all assets remaining in the various Trusts established in Article III in accordance with any powers of appointment exercised by the surviving Beneficiary. To the extent not exercised, such property will be distributed to the descendants of Trustors on a per stirpes basis.

Herbig argues that while this article "provides for the distribution of assets upon Richard's death, . . . it does not provide for an immediate extinction of the WFT." While Herbig is correct that this language does not expressly state that the Welch Family Trust C became "immediate[ly] extinct[]" or that it terminates upon Richard's death, it does, by its terms, direct that the trust be terminated. It provides for the distribution of "all assets remaining in the various Trusts . . . in accordance with any powers of appointment exercised by [Richard]," and to the extent such powers of appointment were not exercised, "such property will be distributed to the descendants of Trustors on a per stirpes basis." There are no provisions allowing for powers of appointment related to the Welch Family Trust C, so under the terms applicable to that trust, any remaining assets at the time of Richard's death "will be distributed to the descendants of Trustors on a per stirpes basis." Other than to distribute "all assets remaining," there are no directives as to what would be done with the trust following Richard's death. After all trust property and assets remaining in the Welch Family Trust C are distributed upon Richard's death, the trust would

19

have no remaining property or corpus. The only reasonable interpretation of this provision is that the Welch Family Trust C was "to continue only until . . . the happening of a certain event," i.e., Richard's death. *See* TEX. PROP. CODE § 112.052. In other words, Richard's death was the "event of termination." *See id.* Once that event occurred, i.e., Richard died, the Welch Family Trust C terminated. This is in line with the purpose of this specific trust, which was to provide annual income payments to Richard, and to allow for additional funds from the principal, if necessary, for Richard's health, education, maintenance, or support, which would no longer be necessary after his death.[1] Accordingly, we conclude that the trial court correctly found that the Welch Family Trust C terminated on Richard's death.

> ### 2. Herbig's powers as trustee of the Welch Family Trust C following Richard's death were restricted to winding up the trust.

Having determined that the Welch Family Trust C terminated on Richard's death, we now must resolve the question of what powers Herbig, as trustee, retained after termination. Specifically, we must determine whether Herbig retained the power to accept or add new property to the Welch Family Trust C after it terminated.

---

[1]    Article III.B. provides: "The Welch family Trust C shall be subject to the following provisions. The Trustee shall be the Beneficiary then surviving – whether Margaret O. Welch or Richard C. Welch. All income shall be paid at least annually to the surviving Beneficiary. If he or she shall need additional funds for health, education, maintenance or support, my Trustee may invade principal for such purpose, all in the sole discretion of my Trustee."

We hold that Herbig did not retain the power to accept or add new property to the Welch Family Trust C after its termination under these facts.

As noted above, Section 112.052 of the Texas Property Code states:

> If an event of termination occurs, the trustee may continue to exercise the powers of the trustee for the reasonable period of time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries. The continued exercise of the trustee's powers after an event of termination does not affect the vested rights of beneficiaries of the trust.

TEX. PROP. CODE § 112.052. Upon termination, trustees retain only the powers necessary to wind up the affairs of the trust and to distribute the trust property in accordance with the terms of the trust. *Sorrel v. Sorrel*, 1 S.W.3d 867, 870 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) (citing *id.*; *Nowlin v. Frost Nat'l Bank*, 908 S.W.2d 283, 289 (Tex. App.—Houston [1st Dist.] 1995, no writ); RESTATEMENT 2D OF TRUSTS § 344 (1957)). "This is so because title, in effect, has already passed to the beneficiaries." *Id.* During the existence of a trust, legal title to the res is in the trustee and equitable title is in the beneficiaries. *Id.* at 871 (citing *Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, no writ)). But, upon the termination of a trust,

> the estate of the trustee ceases, and the legal, as well as the equitable, title vests in the beneficial owner without the necessity of any act or intervention on the part of the trustee, unless the intention of the creator appears that the legal title should continue in the trustee. The termination of a trust leaves the trustee with a mere administrative title to the fund . . . . [A]t the time of termination, the trustee is not

21

immediately divested of all duties and responsibilities, but he has powers and duties appropriate for a winding up of trust affairs.

*Id.* at 870–71 (citing 89 C.J.S. TRUSTS § 96 (1955)).

Moreover, the property code expressly states that the trustee's powers exercised after termination shall not affect the vested rights of beneficiaries of the trust. TEX. PROP. CODE § 112.052. Courts have interpreted this language in Section 112.052 to mean that "the beneficiaries entitled to receive the trust assets upon termination automatically have vested rights upon the termination event," *see Kellner v. Kellner*, 419 S.W.3d 541, 546 (Tex. App.—San Antonio 2013, pet. denied), because upon termination, legal and equitable interests merge, and the beneficiaries acquire full ownership interest in the property. *See Sorrel*, 1 S.W.3d at 871; *Shearrer*, 952 S.W.2d at 78; *see also* TEX. PROP. CODE § 112.034(b) ("[A] trust terminates if the legal title to the trust property and all equitable interests in the trust become united in one person."). After termination, the trustee has only the very limited authority given by statute, i.e., to "wind up the affairs of the trust and to make distribution." *Sorrel*, 1 S.W.3d at 871.

Under this law, after the Welch Family Trust C terminated on September 9, 2019, Herbig was permitted to continue to exercise his powers as trustee for a reasonable time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries. *See* TEX. PROP. CODE § 112.052; *Sorrel*, 1 S.W.3d at 870. Herbig argues that because his powers as trustee included the power

to accept additional property or interests into the trust "at any time," he was endowed with that right beyond the termination of the trust. He asserts that winding up the trust necessarily could include accepting the transfer of property. We disagree.

The opening paragraph of the WFT provides that it assigned to Richard and Margaret "all property, real or personal, which we, or through the actions of our attorneys-in-fact, or any other person may, at any time or from time to time, transfer, add or cause to be added to this Trust, all of which, together with any income thereon, is hereinafter called 'Trust Property[.]'" Article II also provides that "[s]ubject to acceptance by the Trustee, additional property or interests may be transferred or assigned from time to time or at any time by any person . . . ." It is this language that Herbig points to in support of his argument that he could continue to accept new property into the trust even after termination. He contends that Jeanne, and the trial court's, construction of the WFT renders the "at any time" language meaningless. But this language cited by Herbig presupposes that there is a trust in which to accept property. If we were to adopt Herbig's interpretation, this would mean that the trustee could continue to accept new property into a trust even many years after the termination event occurs, preventing the winding up of the trust indefinitely.

Furthermore, this language of the trust neither expressly permits, nor prohibits, the trustee from accepting new property into the trust *after termination*. Accordingly, as Herbig recognizes, where the language of the trust is silent, the

23

provisions of the Trust Code govern. *See* TEX. PROP. CODE § 113.001; *Myrick v. Moody Nat'l Bank*, 336 S.W.3d 795, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.). As stated above, Section 112.052 permits a trustee to retain his powers after termination "for the reasonable period of time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries."

The cases cited by Herbig, wherein courts concluded that the trustee retained various powers after termination to facilitate the winding up of the trust, involve powers not at issue here. For instance, in *Cogdell v. Fort Worth Nat'l Bank*, 544 S.W.2d 825, 829 (Tex. App.—Eastland 1976, writ ref'd n.r.e.), the court held that, notwithstanding the fact that a testamentary trust had ended, the trustee had the authority to compromise and settle its claims against the executors of the estate as part of the winding up of the trust. As is relevant here, the litigation that was the subject of the settlement had been pending for several years before the trust terminated. *See id.* at 826. Before the trust could be wound up and final distributions made, litigation involving the trust would need to be resolved. *See, e.g.*, *Myrick v. Enron Oil & Gas Co.*, 296 S.W.3d 724, 728 (Tex. App.—El Paso 2009, no pet.) (concluding that pending litigation prevented trustee from "winding up" the affairs of trust and making final distribution until after litigation concluded).

Like *Cogdell*, *Myrick v. Enron Oil and Gas Company* involved litigation that prevented the winding up of a trust following termination. *See* 296 S.W.3d at 727–

24

28. There, the court considered the question of whether the trustee of a trust had the power to execute a lease after the occurrence of the termination event. The court explained:

> The pending Trust 25 litigation prevented Moody Bank from "winding up" the affairs of Trust 25 and making a final distribution until after the agreed judgment was entered on March 19, 1993. During the period after the trust terminated and the conclusion of the Trust 25 litigation, Moody Bank had a continuing duty to manage the trust estate and seek the best possible result for the beneficiaries. In the Bank's judgment, that included completing the Crockett County Lease in order to take advantage of the available tax credits. Given that the Crockett County Lease had been negotiated and approved prior to the termination event, we conclude that Moody Bank had the authority and duty to execute it. Because the Crockett County Lease is valid, summary judgment in favor of Moody Bank and EOG was appropriate.

*Id.* at 728. Particularly relevant there was the fact that the lease had been approved prior to the termination event and there was pending litigation preventing the winding up of the trust—both facts that are not present in this case.

In *Myrick v. Moody National Bank*, this Court held that the trustee was authorized to enter into a lease on a ranch that was part of the trust property with terms that extended beyond the termination of the trust. 336 S.W.3d at 803. This Court's analysis in *Myrick v. Moody National Bank* focused on the language of Section 113.011, which specifically authorizes a trustee to execute a lease containing terms or options that extend beyond the duration of the trust. *Id.* (citing TEX. PROP. CODE § 113.011). This Court held that the trust's provision providing for the distribution of assets in the trust estate upon termination did not conflict with Section

113.011, and therefore, the trustee had the power to enter into the lease. *Id.* Of note, the ranch at issue had been a part of the trust property and subject to various leases for decades. *Id.* at 798. Moreover, the trust at issue in *Myrick v. Moody National Bank* had not yet terminated—the dispute was over whether a lease entered into during the existence of the trust could carry over past termination, which would occur at some point in the future. *See id.* at 797–98. This court therefore was not dealing with the issue presented here, i.e., whether a trustee has the power to accept entirely new trust property into a trust after termination.

Herbig contends that Jeanne's interpretation would extinguish multiple other powers granted to the trustee, other than the power to simply distribute assets, including the ability to pay taxes, sell trust property, invest funds, control and manage investments, lease trust properties, and more. Again, we disagree. As is clear in Section 112.052 and the case law, a trustee retains his powers after termination *to the extent necessary to wind up the trust*. TEX. PROP. CODE § 112.052; *Sorrel*, 1 S.W.3d at 871 (after termination, trustee has only limited authority given by statute to "wind up the affairs of the trust and to make distribution"); *Hall v. Rawls*, 188 S.W.2d 807, 814 (Tex. Civ. App.—Beaumont 1945, writ ref'd w.o.m.) (explaining that powers of trustee, except those relating to winding up of trust, terminate on expiration of time during which parties intended trust to exist). To the extent that it would be necessary to pay taxes, sell property to make distributions, manage

26

investment, lease properties, and more, in order to facilitate the winding up of the trust, our decision today should not be interpreted as prohibiting the exercise of those powers depending on the circumstances. *See, e.g.*, RESTATEMENT (3D) OF TRUSTS § 89 (2007) (cmt. c & d) (noting that "[d]uring the windup period the trustee has a duty: to determine and satisfy trust obligations, including those to taxing authorities[;] to ascertain the proper distributees and their shares, and plan and make distribution accordingly[;] . . . to prepare and submit an accounting or report to the court or the beneficiaries[;] . . . exercise such powers as are reasonable and appropriate for *the preservation of the trust property*[;] . . . keep real property and tangible personalty of the trust insured and in repair[;] . . . [and] keep trust property productive"). But those issues are not before us today, and we do not equate the acquisition of new trust property following the termination of the trust with the exercise of a power necessary to the winding up of the trust.

Accordingly, we hold that the neither the express terms of the Welch family Trust C, nor the Trust Code, authorized Herbig to accept the transfers of new property into the trust following Richard's death and the termination of the trust.

### 3. The conveyances to the Welch Family Trust C following Richard's death are void.

Herbig argues that Jeanne fails to cite any authority for the ultimate proposition that the conveyance following Richard's death are void. Although he is correct that Jeanne does not point to any specific legal authority, she did argue in her

27

summary judgment briefing that the transfers were void because "the trusts named as grantee in these instruments ceased to exist immediately upon Richard C. Welch's death." Texas courts have held that "'a deed is void if the grantee is not in existence at the time the deed is executed.'" *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 787 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 600 (Tex. App.—Houston [14th Dist.] 1994, writ denied)). Because we have concluded that the Welch Family Trust C terminated upon Richard's death, and that as trustee, Herbig did not have the power to accept new property into the trust after termination, we hold that this is sufficient to establish that the Welch Family Trust C no longer existed for the purposes of receiving property as a grantee. *See id.* Accordingly, we hold that the trial court correctly determined that the conveyances made by Jeanne on behalf of the WMFT to the Welch Family Trust C after Richard's death are void. *Cf. Sorrel*, 1 S.W.3d at 871 (holding trustees were acting outside authority in attempting to convey trust property after termination and trial court correctly held that conveyance void).

**C.     The portion of the trial court's order voiding the conveyance to Welch Family Trust B is void.**

Although we have held that the trial court correctly concluded that the conveyances to the Welch Family Trust C were void, we are compelled to separately address the single conveyance made by Jeanne on behalf of the WMFT to the Welch

Family Trust B. Only the Welch Family Trust C, through its trustee Herbig, was made a party to this lawsuit. No other trust, including the Welch Family Trust B, was a party to the proceedings below.

A trial court may not enter judgment against a party not before it. *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 686 (Tex. 1991) (per curiam). An order is void when a court has no power or jurisdiction to enter it. *Urbish v. 127th Jud. Dist. Ct.*, 708 S.W.2d 429, 431 (Tex. 1986); *Tomlinson v. Khoury*, 624 S.W.3d 601, 605–06 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). "'It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties.'" *Tomlinson*, 624 S.W.3d at 605 (quoting *Velasco v. Ayala*, 312 S.W.3d 783, 797 (Tex. App.—Houston [1st Dist.] 2009, no pet.)). A court obtains jurisdiction over a defendant through valid service of process or through the defendant's appearance. *Mapco*, 817 S.W.2d at 687 (citing TEX. R. CIV. P. 124) ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance."); *Velasco*, 312 S.W.3d at 798 ("Personal jurisdiction is comp[o]sed of two elements: (1) the defendant must be amenable to the jurisdiction of the court and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant."). And where a court rendering judgment has no jurisdiction over the parties or property, that judgment is void. *In re D.S.*, 602 S.W.3d 504, 512 (Tex. 2020).

Texas law is clear that in all suits "by or against a trustee and all proceedings concerning trusts," the trustee is a necessary party to the action. *See* TEX. PROP. CODE §§ 115.001(a), 115.011(b)(4); *Tomlinson*, 624 S.W.3d at 608; *see also Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006) ("The general rule in Texas (and elsewhere) has long been that suits against a trust must be brought against its legal representative, the trustee."); *In re Estate of Webb*, 266 S.W.3d 544, 548 (Tex. App.—Fort Worth 2008, pet. denied) ("The Texas Trust Code provides that in an action by or against a trustee and in all proceedings concerning trusts, the trustee is a necessary party if a trustee is serving at the time the action is filed." (quotation omitted)). And where the trustee is not properly before the court as a result of service, acceptance, waiver of process, or an appearance, Texas courts have invalidated orders that grant relief against a trust. *See, e.g.*, *Tomlinson*, 624 S.W.3d at 609–10 (holding trial court lacked jurisdiction over trust where party was before trial court in individual capacity, not in his capacity as trustee, and vacating post-judgment modified turnover orders that awarded relief against trust as void); *In re Ashton*, 266 S.W.3d 602, 604 (Tex. App.—Dallas 2008, orig. proceeding) ("[F]or relief to be ordered against a trust, its trustee must be properly before the trial court as a result of service, acceptance, or waiver of process, or an appearance.").

Although neither party raises this issue, we, as an appellate court, lack jurisdiction to consider the merits of an appeal from a void order; rather, we have

30

jurisdiction only to determine that the order or judgment underlying the appeal is void and make appropriate orders based on that determination. *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012). And we must consider our jurisdiction, even if that consideration is sua sponte. *Id.* at 624.

As noted, Herbig was only a party to this lawsuit in his capacity as trustee for the Welch Family Trust C. The record before us does not indicate that Herbig was sued or made an appearance in his capacity as trustee for the Welch Family Trust B. Yet it is clear from the trial court's summary judgment order, which was incorporated in the trial court's final judgment, that it ordered relief against the Welch Family Trust B by voiding the conveyance from the WMFT to that trust. The trial court had no jurisdiction over the Welch Family Trust B, and we hold that the portion of the trial court's order voiding the conveyance to this trust is void for lack of jurisdiction.

## Conclusion

We vacate the portion of the trial court's summary judgment order, incorporated into the final judgment, that voided the Warranty Deed from grantor Jeanne F. Welch a/k/a Jeanne F. Manry, Trustee of the Welch Manry Family Trust, to grantee Lewis Sims, Successor Trustee of the Welch Family Trust B, dated October 7, 2019, and filed in the Official Public Records of Blanco County, Texas

31

under File No. 193583. We affirm the remainder of the trial court's final judgment as herein modified.

Amparo Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.